UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BP WEST COAST PRODUCTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SKR INC., an Oregon corporation; and SHERIF K. RIAD, individually and the marital community composed of SHERIF K. RIAD and NAGWA N. RIAD,<br><br>Defendants. | CASE NO. C11-6074 MJP<br><br>ORDER GRANTING SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's motion for summary judgment on their claims. (Dkt. No. 91.) The Court considered the motion, Defendants' response (Dkt. No. 102), Plaintiff's reply (Dkt. No. 103) and all related documents. The Court GRANTS the motion.

Defendants Sherif Riad and Nagwa Riad submitted, on their own behalf and on behalf of their corporation, a second untimely response. (Dkt. No. 111.) This submission was improper and was not considered. First, the Riads may not appear on behalf of their corporation; only a licensed attorney may represent a corporation. Rowland v. Cal. Men's Colony, 506 U.S. 194,

ORDER GRANTING SUMMARY JUDGMENT- 1

1  202 (1993). Second, the Riads may not represent themselves while they still have attorneys of

2  record. Local Rule GR 2(g)(1). For these reasons, Dkt. No. 111 and its exhibits are STRICKEN

3  from the record.

4  **Background**

5

6  BP West Coast Products LLC ("BPWCP") markets and distributes ARCO-branded

7  gasoline. (Dkt. No. 1 at 3.) ARCO gasoline is sold to the public through a network of

8  independent dealers licensed to use the ARCO Marks and trade dress pursuant to agreements

9  defined as franchises under the Petroleum Marketing Practices Act. (Id.) BPWCP is also

10 franchisor of convenience stores under the am/pm service mark ("ampm"). (Id.) Defendants

11 Sherif and Nagwa Riad ("the Riads") through their wholly owned corporation, Defendant SKR,

12 Inc., purchased from BPWCP a gasoline dealership and ampm convenience store business in

13 2008 ("Beaverton Station") and 2001 ("Vancouver Station"). (Dkt. No. 1 at 4.) BPWCP brings

14 suit against Defendants for alleged breaches of the agreements governing the Vancouver and

15 Beaverton stores. (Id. at 3.) BPWCP alleges Defendants owe damages for unpaid gasoline

16 deliveries and unpaid royalties, and are in violation of franchise agreements and deed

    restrictions. (Id.)

17
    Defendants entered into an ARCO Gasoline Dealer Agreement ("GDA") and an ampm

18 Mini Market Agreement related to the Beaverton Station effective October 1, 2008 (collectively,

19 "Beaverton Site Agreements"). (Dkt. No. 91 at 2.) The GDA included both the sublease for the

20 Beaverton Property and a Motor Fuel Supply Agreement. (Id.) Both agreements had a term of

21 three years with optional rights of renewal (Id.) After profitably operating the Beaverton Station

22 for over six years, Defendants began looking to purchase another ARCO gas station in 2006.

23 (Id.)

24

ORDER GRANTING SUMMARY JUDGMENT- 2

Mr. Riad attended a How-to-Bid seminar in 2006 conducted by BPWCP's broker, NRC Realty, but was unsuccessful in placing any bids. (Dkt. No. 91 at 3.) Ms. Riad attended another How-to-Bid seminar in April 2007. Ms. Riad contends she approached then-regional sales manager Marty Cuneo to inquire about profit margins SKR could expect on gasoline and store sales. (Dkt. No. 93-1 at 38.) She claims he disclosed she could estimate future profitability by using a margin of 9 cents per gallon and a 30-32% margin on in-store sales. (Id. at 81-83.) According to NRC's attendance records and Mr. Cuneo himself, Mr. Cuneo was not at the April 2007 How-to-Bid seminar. (Dkt. No. 100-1 at 2, Dkt. No. 95 at 2.)

After the seminar, Defendants requested and received Property Specific Packages ("PSPs") on a few properties, outlining store-specific information including recent annual in-store sales figures, and gallons of gasoline sold. (Dkt. No. 91 at 3.) The PSPs did not contain information on profitability of any stations, and contained an express disclaimer stating, "The sales information stated above is the actual operating results for this unit. It does not constitute a suggestion, representation or warranty of future sales. A new franchisee's or operator's individual financial results are likely to differ." (Dkt. No. 100-1 at 4.)

After some personal investigation of three sites, Defendants placed bids and were successful on one property, the Vancouver Station. (Dkt. No. 91 at 4.) BPWCP agreed to sell Defendants the Vancouver Station for $1,625,000.00, below the market value of $2,060,000.00 contingent on Defendants' agreement to (1) enter into an ampm Mini Market franchise agreement with a twenty year term, (2) enter into an ARCO Gasoline Dealer Agreement granting BPWCP the exclusive right to supply gasoline to the Vancouver Station for twenty years, and (3) take title to the property by way of a Special Warranty Deed imposing Deed Restrictions. (Dkt. No. 91 at 4-5.)

1  For each of the GDAs and ampm Agreements between BPWCP and SKR, Defendant
2  Sharif Riad signed unconditional Guaranties, providing if SKR fails to pay, when due, any
3  amount owing to BPWCP under the GDAs or ampm Agreements, BPWCP has the right to
4  recover those amounts from Mr. Riad personally. (Id. at 5.) The Guaranties also provided Mr.
5  Riad would indemnify BPWCP for all costs and reasonable attorneys' fees incurred in
6  connection with any action, non-performance or breach of the agreements. (Dkt. No. 94-2 at 39.)

7  In late 2009 Defendants began experiencing financial problems. (Dkt. No. 91 at 6.) Up to
8  this point, SKR was receiving gasoline deliveries on credit. (Id.) When a dealer gets gasoline on
9  credit, BPWCP delivers the gasoline without any prepayment, and later performs an electronic
10 transfer of funds from the dealer's bank account to collect payment for gasoline delivered. (Id.)
11 If the dealer's bank account has insufficient funds to pay for the gasoline already delivered, it is
12 referred to as "bouncing a load." (Id.) SKR began bouncing loads in 2010. (Id.) When SKR fell
13 too far behind, BPWCP exercised its discretion to revoke SKR's credit privileges, requiring cash
14 on delivery ("COD") until its accounts were brought current. (Dkt. No. 93-1 at 37.) SKR was put
15 on COD for nearly all of 2010. (Id.) SKR began bouncing loads again in early 2011. (Dkt. No.
16 91 at 8.) Mr. Riad testified SKR was put back on COD in 2011 (Id. at 38) but Ms. Riad disputes
17 this was the case. (Dkt. No. 102 at 2.)

18 Around October of 2011, SKR stopped ordering gasoline from BPWCP and began selling
19 unbranded gasoline in violation of the GDAs and Deed Restrictions. (Dkt. No. 91 at 8.)
20 Defendants do not dispute this is the case. They state in their Response to the Motion for
21 Summary Judgment:

22 > We would have no dispute as to declaratory relief requested by BPWCP had they kept their covenant to sell us gas at a competitive price. But they didn't and it wasn't
23 > reasonable for us to be expected to abide by the Deed restrictions. We are forced to sell unbranded fuel in an attempt to maintain our livelihood, and protect our investment.
24

ORDER GRANTING SUMMARY JUDGMENT- 4

(Dkt. No. 102 at 2.) Defendants do not dispute Mr. Riad's personal Guaranty was signed in good faith. (Id.) Defendants' only opposition to BPWCP's motion for summary judgment on BPWCP's claims is the assertion they were not put back on COD in 2011, that Mr. Cuneo was at the April 2007 How-to-Bid seminar, and there is an error in a table showing the amount owed to BPWCP, where one line item should be marked as paid. (Id. at 1-3.) They do not dispute the validity of any agreements at issue.

BPWCP has claims for (1) Breach of contract related to franchise agreements, (2) Breach of contract related to Guaranties, (3) Declaratory judgment the deed restrictions are enforceable for the Vancouver Station, (4) Declaration of rights related to the use of the land and ejectment for the Beaverton Station, (5) Federal trademark infringement and unfair competition in violation of the Lanham Act, and (6) State unfair competition. (Dkt. No. 1.) Partial summary judgment was already granted in favor of BPWCP on the ejectment claim for the Beaverton Station. (Dkt. No. 48.) In the motion at issue here, BPWCP seeks summary judgment on its claims for breach of contract related to franchise agreements, breach of guaranties, and declaratory judgment on the deed restrictions related to the Vancouver Station. BPWCP's claims for Federal trademark infringement and unfair competition in violation of the Lanham Act and State unfair competition are not addressed.

## Analysis

I.   Standard for Summary Judgment

Summary judgment is warranted if no material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if .

. . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). If the moving party makes this showing, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

II.  Breach of Contract: Franchise Agreements

To make a claim for breach of contract, a plaintiff must prove (1) there is a valid contract between the parties, (2) the contract imposes a duty, (3) the duty was breached, and (4) the breach caused damage to the claimant. Citoli v. City of Seattle, 115 Wn. App. 459, 476 (2002). As noted above, Defendants do not dispute any of these elements. Defendants' Response raises, at best, vague allegations BPWCP did not give them the support or tools they needed to abide by the contracts, and a belief BPWCP did not "act in good faith and in the spirit of [the] contracts." (Dkt. No. 102 at 3.) The only specific concern Defendants raise is in respect to a line item in the damages claimed by BPWCP.

BPWCP alleges damages in the amount of $597,173.04 for breach of contract of the franchise agreements. (Dkt. No. 103 at 2.) Defendants contest one of the invoices for gasoline delivered for one of their stations in the amount of $40,145.41, arguing this was paid. (Dkt. No. 102 at 1.) To support the allegation, Defendants submit an invoice with the line item highlighted, showing the amount due, invoice number and due date. (Dkt. No. 102-1 at 2.) BPWCP argues

this evidence should be stricken from the record because it was not produced, despite a court order, and even if it is considered it does not show any amount was actually paid. (Dkt. No. 103 at 2.) Even if the document is considered, it does not show Defendants made any payment. Instead, it shows an amount owing. (Dkt. No. 102-1 at 2.) Summary judgment in favor of Plaintiff is GRANTED for breach of the franchise agreements in the amount of $597,173.05.

### III.  Breach of Contract: Guaranties

"The contract of guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of any nonperformance by such other, the latter being bound to perform primarily." Robey v. Walton Lumber Co., 17 Wn.2d 242, 255 (1943), quoting 24 Am. Jur. 873-4, § 2.  As noted above, Defendants concede BPWCP is entitled to summary judgment on its claim for breach of the Guaranties. (Dkt No. 102 at 2.) Summary judgment is GRANTED in Plaintiff's favor on the claim for breach of Guaranties.

### IV.  Declaratory Judgment on Enforceability of Deed Restrictions

Plaintiff seeks a declaratory judgment that the Deed Restrictions agreed to by the Defendants for the Vancouver Station are valid and enforceable. (Dkt. No. 1 at 7.) The Court must first address whether a declaratory judgment is appropriate under these circumstances, and then address enforceability.

#### a. Declaratory Judgment

The Declaratory Judgment Act allows a court to recognize a plaintiff's right even where no immediate enforcement is sought, and further relief based on the declaratory judgment may be granted whenever necessary or proper. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300 (1943). To determine whether declaratory judgment is appropriate, a district court must

determine (1) whether an actual case or controversy exists, and (2) whether the court should exercise its discretion to award declaratory relief. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005).

"[T]he appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 671, quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). The Parties here do not dispute an actual case or controversy exists between them. There is an actual case or controversy on the issue of the Deed Restrictions, and this prong of the declaratory judgment test is met.

In determining whether a district court should exercise its discretion to issue a declaratory judgment the court should consider the factors set out in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942). Principal Life Ins. Co., 394 F.3d at 669. The Brillhart factors state, "(1) the district court should avoid needless determination of state law issues, (2) it should discourage litigants from filing declaratory judgment actions as a means of forum shopping, and (3) it should avoid duplicitous litigation." Id. at 672 (citations omitted). The 9th Circuit laid out additional factors, including (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, (2) whether it will afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding, (3) whether it will settle all aspects of the controversy, (4) whether it is being sought for procedural fencing or to obtain a res judicata advantage, (5) whether it will result in entanglement between the federal and state court systems, (6) convenience of the parties, and (7) availability and convenience of other remedies. Principal Life Ins. Co., 394 F.3d at 672.

1    Here, all factors weigh in favor of the Court exercising its discretion to issue a declaratory
2    judgment the deed restrictions are enforceable. Defendants do not raise any dispute as to whether
3    it is appropriate for the Court to enter a declaratory judgment on the Deed Restrictions. This
4    Court recently held with respect to identically worded Deed Restrictions declaratory judgment
5    was appropriate and the Deed Restrictions were enforceable. <u>BP West Coast Prods., LLC v.</u>
6    <u>Shalabi</u>, 2013 U.S. Dist. LEXIS 111464, *19-21 (W.D. Wash. Aug. 6, 2013). Like the <u>Shalabi</u>
7    case, declaratory judgment is appropriate because the facts of this case do not raise forum
8    shopping or state law concerns, and it would clarify and settle the positions of the parties.
9    Declaratory judgment on the Deed Restrictions appropriate here.

10            b.   Enforceability of the Deed Restrictions

11    A restrictive covenant is unenforceable if it is illegal, unconstitutional, or violates public
12    policy. RESTATEMENT (THIRD) OF REAL PROPERTY: SERVITUDES § 3.1. Like the defendants in
13    <u>Shalabi</u>, Defendants here do not argue the Deed Restrictions are illegal, unconstitutional or in
14    violation of public policy. Nor do they deny their actions are in violation of the Deed
15    Restrictions. The only argument Defendants put forth plausibly going to the issue of
16    enforceability is the assertion BPWCP "did not keep their covenant to sell [them] gas at a
17    competitive price." (Dkt. No. 102 at 2.) To the extent this argument is directed at this claim, it is
18    not sufficient to withstand summary judgment.

19            The allegation BPWCP's price was not competitive is conclusory and not supported by
20    any evidence in the record. Further, whether a restriction is "reasonable" is a question of law that
21    turns on whether enforcement protects the rights bargained for by the grantee. <u>United Dye Works</u>
22    <u>v. Strom</u>, 179 Wash. 41, 45 (1934). Defendants do not dispute BPWCP specifically bargained for
23    the Deed Restrictions and as part of the bargain, they were able to purchase the Vancouver
24

Station at a discount from its appraised value. (Dkt. No. 102-7 at 7.) Defendants offer no support for any argument, to the extent an argument is made, that the Deed Restrictions are not reasonable or enforceable. Summary Judgment is GRANTED on this claim and a declaratory judgment is entered that the Deed Restrictions on the Vancouver Site are valid and enforceable.

### Conclusion

The facts in this case are clear and Defendants generally do not dispute the claims against them. Summary judgment is appropriate and is GRANTED in favor of Plaintiff on the claims of breach of contract for the franchise agreements, breach of the Guaranties, and declaratory judgment that the Deed Restrictions on the Vancouver Site are valid and enforceable. Because the unfair trade practices claim and state unfair competition claim are not addressed, these claim remain active.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 17th day of September, 2013.

Marsha J. Pechman
Chief United States District Judge