1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

BP WEST COAST PRODUCTS LLC,

CASE NO. C11-6074 MJP

11

           Plaintiff,

ORDER GRANTING SUMMARY
JUDGMENT TO BPWCP ON

12

   v.

COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY

13

SKR INC, et al.

DISMISS COUNTERCLAIMS, AND
DENYING MOTION TO AMEND

14

           Defendants.

MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS

15

16

      This matter initially came before the Court on Plaintiff's motion for summary judgment

17

on Defendants' counterclaims. (Dkt. No. 92.) The Court considered the motion, Defendants'

18

response (Dkt. No. 102), and Plaintiff's reply (Dkt. No. 103). After this motion was fully briefed,

19

individual Defendants submitted on their own behalf and on behalf of the corporation SKR, Inc.

20

a motion to voluntarily dismiss Defendants' counterclaims without prejudice. (Dkt. No. 106.)

21

Plaintiff opposed this motion. (Dkt. No. 109.) One of the grounds on which Plaintiff opposed the

22

motion was that it was improperly submitted as a pro se filing on behalf of a corporation and

23

24

ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 1

1   while Defendants are represented by a licensed attorney. (Id. at 2-3.)  Plaintiff's opposition was

2   filed on September 11, 2013. Nearly one month later, on October 10, 2013, Defendants' local

3   counsel filed a motion to amend the motion to voluntarily dismiss counterclaims, only to the

4   extent the Court would consider it filed by the attorney of record in this case. (Dkt. No. 122.)

5       Upon consideration of all the motions, responsive pleadings and relevant information

6   before the Court, the Court DENIES the motion to voluntarily dismiss and the motion to amend

7   the motion to voluntarily dismiss, and GRANTS the motion for summary judgment on

8   Defendants' counterclaims. The motion for summary judgment incorporates the facts and

9   background section from Plaintiff's simultaneously filed motion for summary judgment on

10  Plaintiff's claims (Dkt. No. 91), and background from that motion and its supporting attachments

11  is referenced below.

12                                    **Background**

13      Plaintiff BP West Coast Products ("BPWCP") filed suit against Defendants SKR, Inc.,

14  Sherif K. Riad and his wife Nagwa Riad (collectively "SKR"), for violating certain franchising

15  agreements, deed restrictions and trademark rights.  SKR operates two gasoline stations—one in

16  Vancouver, Washington, and one in Beaverton, Oregon.  As alleged, SKR refuses to sell ARCO

17  branded gasoline and am/pm products, which BPWCP alleges is a breach of the franchising

18  agreements SKR entered into, and certain deed restrictions and real estate agreements.

19      BPWCP markets and distributes ARCO-branded gasoline. (Dkt. No. 1 at 3.) ARCO

20  gasoline is sold to the public through a network of independent dealers licensed to use the ARCO

21  Marks and trade dress pursuant to agreements defined as franchises under the Petroleum

22  Marketing Practices Act. (Id.) BPWCP is also franchisor of convenience stores under the am/pm

23

24  ORDER GRANTING SUMMARY JUDGMENT TO
    BPWCP ON COUNTERCLAIMS, DENYING
    MOTION TO VOLUNTARILY DISMISS
    COUNTERCLAIMS, AND DENYING MOTION
    TO AMEND MOTION TO VOLUNTARILY
    DISMISS COUNTERCLAIMS- 2

1   service mark ("ampm"). (Id.) The Riads, through their wholly owned corporation, Defendant

2   SKR, Inc., purchased from BPWCP a gasoline dealership and ampm convenience store business

3   in 2008 ("Beaverton Station") and 2001 ("Vancouver Station"). (Dkt. No. 1 at 4.)

4          Defendants entered into an ARCO Gasoline Dealer Agreement ("GDA") and an ampm

5   Mini Market Agreement related to the Beaverton Station effective October 1, 2008 (collectively,

6   "Beaverton Site Agreements"). (Dkt. No. 47 at 9.) The GDA included both the sublease for the

7   Beaverton Property and a Motor Fuel Supply Agreement. (Dkt. No. 91 at 2.) Both agreements

8   had a term of three years with optional rights of renewal (Id.) After profitably operating the

9   Beaverton Station for over six years, Defendants began looking to purchase another ARCO gas

10  station in 2006. (Id.)

11         Mr. Riad attended a How-to-Bid seminar in 2006 conducted by BPWCP's broker, NRC

12  Realty, but was unsuccessful in placing any bids. (Dkt. No. 91 at 3.) Ms. Riad attended another

13  How-to-Bid seminar in April 2007. Ms. Riad contends she approached then-regional sales

14  manager Marty Cuneo to inquire about profit margins SKR could expect on gasoline and store

15  sales. (Dkt. No. 93-1 at 38.) She claims he disclosed he could estimate future profitability by

16  using a margin of 9 cents per gallon and a 30-32% margin on in-store sales. (Id. at 81-83.)

17  According to NRC's attendance records and Mr. Cuneo himself, Mr. Cuneo was not at the April

18  2007 How-to-Bid seminar. (Dkt. No. 100-1 at 2, Dkt. No. 95 at 2.)

19         After the seminar, Defendants requested and received Property Specific Packages

20  ("PSPs") on a few properties, outlining store-specific information including recent annual in-

21  store sales figures, and gallons of gasoline sold. (Dkt. No. 91 at 3.) The PSPs did not contain

22  information on profitability of any stations, and contained an express disclaimer stating, "The

23

24  ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 3

1  sales information stated above is the actual operating results for this unit. It does not constitute a

2  suggestion, representation or warranty of future sales. A new franchisee's or operator's

3  individual financial results are likely to differ." (Dkt. No. 100-1 at 4.)

4          After some personal investigation of three sites, Defendants placed bids and were

5  successful on one property, the Vancouver Station. (Dkt. No. 91 at 4.) BPWCP agreed to sell

6  Defendants the Vancouver Station for $1,625,000.00, below the market value of $2,060,000.00

7  contingent on Defendants' agreement to (1) enter into an <u>ampm</u> Mini Market franchise

8  agreement with a twenty year term, (2) enter into an ARCO Gasoline Dealer Agreement granting

9  BPWCP the exclusive right to supply gasoline to the Vancouver Station for twenty years, and (3)

10  take title to the property by way of a Special Warranty Deed imposing Deed Restrictions. (Dkt.

11  No. 91 at 4-5.)

12          Around October of 2011, SKR stopped ordering gasoline from BPWCP and

13  began selling unbranded gasoline in violation of the GDAs and Deed Restrictions. (Dkt. No. 91

14  at 8.) Defendants do not dispute this is the case. They state in their Response to the Motion for

15  Summary Judgment:

16          We would have no dispute as to declaratory relief requested by BPWCP had they kept
            their covenant to sell us gas at a competitive price. But they didn't and it wasn't
17          reasonable for us to be expected to abide by the Deed restrictions. We are forced to sell
            unbranded fuel in an attempt to maintain our livelihood, and protect our investment.
18

19  (Dkt. No. 102 at 2.) Defendants do not, in their response, dispute the validity of any agreements

20  at issue. Instead, SKR primarily argues BPWCP did not act within the spirit of the contracts. (<u>Id</u>.

21  at 3.)

22

23

24  ORDER GRANTING SUMMARY JUDGMENT TO
    BPWCP ON COUNTERCLAIMS, DENYING
    MOTION TO VOLUNTARILY DISMISS
    COUNTERCLAIMS, AND DENYING MOTION
    TO AMEND MOTION TO VOLUNTARILY
    DISMISS COUNTERCLAIMS- 4

1    SKR initially filed counterclaims against BPWCP and several individual BPWCP

2  employees as Third-Party defendants.  This Court dismissed all claims against third party

3  defendants without leave to amend, as well as several other counterclaims against BP. (Dkt. No.

4  46.) SKR, in their second amended counterclaims, pursues an array of counterclaims for breach

5  of contract, violations of Washington's Franchise Investment Protection Act ("FIPA"), Oregon's

6  Motor Fuel Franchise Act ("OMFFA") and Washington's Gasoline Dealer Bill of Rights Act

7  ("GDBRA"), violations of the Consumer Protection Act ("CPA"), fraud and misrepresentation,

8  equitable relief, and declaratory relief.  (Dkt. No. 47.)

9    BPWCP moved to dismiss all counterclaims except certain enumerated claims. (Dkt. No.

10  49 at 21-22.) The Court granted the motion to dismiss. (Dkt. No. 58 at 8.) The remaining

11  counterclaims were (1) Declaratory judgment on deed restrictions; (2) Statutory claims under the

12  CPA, FIPA and GDBRA; (3) Declaratory judgment on Gasoline Agreements; (4) Statutory and

13  common law fraud claims under FIPA and GDBRA and/or negligent misrepresentation; (5)

14  Equitable counterclaims for money had & received, unjust enrichment, and constructive trust;

15  and (6) Breach of contract. (Dkt. No. 49 at 22.) Following this order, BPWCP moved for

16  summary judgment on their claims (Dkt. No. 91) and SKR's counterclaims (Dkt. No. 92). The

17  motion on the counterclaims is at issue here, and the motion on BPWCP's claims was granted in

18  its favor. (Dkt. No. 117.) In granting BPWCP's motion for summary judgment on their claims,

19  the declaratory judgment claim on the deed restrictions was decided in BPWCP's favor. (Id. at

20  10.)

21

22

23

24  ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 5

1

**Analysis**

2    I.    Motion to Voluntarily Dismiss and Motion to Amend

3    The motion to voluntarily dismiss counterclaims and the motion to amend the motion to

4 voluntarily dismiss counterclaims are DENIED. First, Plaintiff is correct the Riads improperly

5 submitted their motion on behalf of the corporation SKR, Inc., and as pro se litigants while there

6 is counsel of record. Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993), Local

7 Rule GR 2(g)(1). Defendants' local counsel attempted to correct the problems by submitting a

8 motion to amend the motion to voluntarily dismiss "for the purposes of having said motion

9 presented by Defendants/Counter claimants' Attorney of Record." (Dkt. No. 122 at 2.) Besides

10 the fact this statement is directly contradictory to the only reasoning put forth in the Riads'

11 motion, that they have been abandoned by counsel, it fails to save the motion.

12    Leave to amend should not be granted when amendment would be futile, and futility

13 alone is enough to refuse amendment. United States v. Smithkline Beecham Clinical Labs., 245

14 F.3d 1048, 1052 (9th Cir. 2001). Amendment would be futile in this case because the motion to

15 voluntarily dismiss cannot succeed on its merits for the reasons set forth below. The motion to

16 amend is DENIED. (Dkt. No. 122.)

17    Pursuant to Fed. R. Civ. P. 41(a)(2), a party may only obtain voluntary dismissal of its

18 claims without prejudice after the opposing party has filed a motion for summary judgment with

19 leave of court and at the court's discretion. Terrovona v. Kincheloe, 852 F.2d 424, 429 (9th Cir.

20 1988). A district court should deny a motion for voluntary dismissal if the defendant will suffer

21 some "plain legal prejudice" as a result. Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143,

22 145 (9th Cir. 1982). Plain legal prejudice is not merely the prospect of another lawsuit. Id. Plain

23

24

ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 6

1  legal prejudice means prejudice to some legal interest, legal claim, or legal argument. Smith v.

2  Lenches, 263 F.3d 972, 975 (9th Cir. 2001). Here, BPWCP will suffer plain legal prejudice if

3  voluntary dismissal is allowed because SKR's delay in seeking dismissal was very dilatory and if

4  the request is granted, may subject BPWCP to inconsistent rulings.

5        In evaluating plain legal prejudice, a district court may consider whether the party

6  seeking voluntary dismissal has been dilatory in doing so. Bollinger v. Lilley, 2007 U.S. Dist.

7  LEXIS 60706 (D. Nev. Aug. 17, 2007). The court may also consider whether the party is

8  requesting a voluntary dismissal to avoid a near-certain adverse ruling. Maxum Indem. Ins. Co.

9  v. A-1 All Am. RoofingCo., 299 Fed. Appx. 664, 666 (9th Cir. 2008). Here, SKR has been very

10  dilatory.  Their motion to voluntarily dismiss the counterclaims is filed nearly a year and a half

11  after the counterclaims were initially brought (Dkt. No. 21), and after the Court ruled on several

12  motions related to them. Some of the counterclaims are in direct opposition to claims brought by

13  Plaintiff that this Court already decided in Plaintiff's favor. Allowing for voluntary dismissal of

14  these claims could result in future inconsistent rulings. The concern of inconsistent rulings

15  extends to third parties that Defendants initially brought counterclaims against. This Court has

16  already dismissed these claims. (Dkt. No. 46).

17        Additionally, the motion to voluntarily dismiss appears disingenuous. The sole reason

18  Defendants provide to justify voluntary dismissal is abandonment by their counsel, and counsel

19  later moved to amend the motion such that it would be considered brought by counsel. (Dkt. No.

20  122.) On the facts of this case, allowing voluntary dismissal of Defendants' counterclaims

21  without prejudice is not appropriate.  These claims have been extensively litigated and allowing

22

23

ORDER GRANTING SUMMARY JUDGMENT TO
24  BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 7

1   dismissal would create a potential for future inconsistent rulings and would cause plain legal

2   harm to Plaintiff. The motion to voluntarily dismiss is DENIED. (Dkt. No. 106.)

3          II.      Summary Judgment on Counterclaims

4         Summary judgment is warranted if no material issue of fact exists for trial.  Warren v.

5   City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The

6   underlying facts are viewed in the light most favorable to the party opposing the motion.

7   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary

8   judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

9   the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party

10  moving for summary judgment has the burden to show initially the absence of a genuine issue

11  concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the

12  moving party makes this showing, the burden shifts to the nonmoving party to establish the

13  existence of an issue of fact regarding an element essential to that party's case, and on which that

14  party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

15  (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead

16  must have evidence showing there is a genuine issue for trial.  Id. at 324. Upon consideration of

17  the briefing and all relevant materials, the Court finds no genuine issues of material fact and

18  GRANTS summary judgment in Plaintiff's favor on Defendants' counterclaims. Each

19  counterclaim is addressed below.

20

      A.  Declaratory Judgment on Deed Restrictions

21
      SKR argues it is entitled to declaratory judgment regarding the invalidity of the deed

22
restrictions on the Vancouver property. (Dkt. No. 47 at 46, 47.) This Court has already found the

23

24  ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 8

1   deed restrictions enforceable and valid in the Order granting summary judgment on Plaintiff's

2   claims. (Dkt. No. 117 at 9-10.) The issue need not be readdressed here as it has already been

3   decided in favor of Plaintiff.  Summary judgment on the issue of deed restrictions is GRANTED

4   in favor of BPWCP.

5                    B.   Statutory Claims under CPA, FIPA, GDBRA

6                         1.   With respect to the Vancouver facility, BPWCPs alleged violation of anti-
                              discrimination provisions in FIPA and GDBRA by requiring some
7                             locations to operate both ARCO and ampm stores while others could
                              operate stand alone ARCO stores.
8
        The anti-discrimination provisions of FIPA and GDBRA are substantially the same,
9
    making it unfair or deceptive for a franchisor to "[d]iscriminate between motor fuel retailers in
10
    the charges offered or made for royalties, goods, services . . . or any other business dealing"
11
    unless the disparate treatment is reasonable, based on franchises granted at materially different
12
    times, and/or is not arbitrary. RCW 19.100.080(2)(c), RCW 19.120.080(2)(b). Claims under
13
    these provisions may only be brought as violations of the CPA. BP W. Coast Prods., LLC v.
14
    Shalabi, 2012 U.S. Dist. LEXIS 82879, *24, (W.D. Wash. June 14, 2012). SKR contends
15
    BPWCP's actions were discriminatory when it allowed some dealers to operate stand-alone
16
    ARCO stations but required SKR to enter into both an ARCO dealership and an am/pm franchise
17
    agreement. (Dkt. No. 47 at 40-41.) SKR argues gasoline-only dealers are treated better than those
18
    with the ampm franchise agreement because they do not have to pay a $70,000 ampm fee, they
19
    do not pay a 14% royalty on inside sales, and they do not participate in mandatory sales
20
    programs. (Id.)
21
        The facts as SKR allege do not amount to an anti-discrimination claim under FIPA or
22
    GDBRA. SKR does not complain it was treated differently than other ampm ARCO dealerships.
23
    ORDER GRANTING SUMMARY JUDGMENT TO
24  BPWCP ON COUNTERCLAIMS, DENYING
    MOTION TO VOLUNTARILY DISMISS
    COUNTERCLAIMS, AND DENYING MOTION
    TO AMEND MOTION TO VOLUNTARILY
    DISMISS COUNTERCLAIMS- 9

1   Instead, it compares itself to entities that are not similarly situated, and the alleged discrimination

2   goes back before the time of contracting. The FIPA discrimination provision is designed to

3   govern the post-sale relationship between a franchisor and franchisee. Coast to Coast Stores,

4   Inc., v. Gruschus, 100 Wn.2d 147, 150 (1983). SKR entered into an ampm franchise agreement,

5   and cannot claim discrimination because others did not. A franchisor may have different

6   franchises and run them differently. This Court has already held that under FIPA, "a parent

7   company cannot be held liable for creating different rate structures among franchises operated

8   under wholly separate trademarks."   Madison House, Ltd. v. Sotheby's Int'l Realty Affiliates,

9   Inc., 2007 U.S. Dist. LEXIS 11654, *7-8 (W.D. Wash. Feb. 20, 2007.) SKR entered into an

10  ampm agreement, and cannot make an antidiscrimination claim on grounds others did not enter

11  into the same franchise agreement and were thus treated differently. Summary judgment on the

12  discrimination claims is GRANTED in favor of BPWCP.

13

14          2.   With respect to the Vancouver facility, BPWCP's alleged violation of
                 reasonable price provisions in FIPA and GDBRA by charging
                 unreasonable prices for gas, beer, soda, salty snacks and tobacco.

15

16      Both FIPA and GDBRA prohibit franchisors from selling products to franchisees at a

17  more than reasonable price. RCW 19.100.180(2)(d), RCW 19.120.180(2)(c). SKR alleges

18  BPWCP violated these provisions by charging unreasonable prices for gas, beer, soda, salty

19  snacks, and tobacco at the Vancouver station. (Dkt. No. 47 at 29-30.) The FIPA reasonable price

20  provision does not apply if the franchisee is required by the franchise agreement to purchase

21  products from a third party, unless the franchisors obtain undisclosed benefits from the third

22  party as a result of the required product purchases. Nelson v. National Fund Raising Consultants,

23  Inc., 120 Wn.2d 382, 389 (1992).  GDBRA's reasonable price provision is similarly directed at

24
ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 10

1   the relationship between franchisor and franchisee. With respect to beer, soda, salty snacks and

2   tobacco, it is undisputed these products were purchased by SKR from third party vendors. (Dkt.

3   No. 93-1 at 21.)

4       While SKR alleges in its counterclaims the prices it was charged by third party vendors,

5   such as Costco, were higher "than they would pay if they simply went to Costco and brought the

6   product directly," nearly identical allegations in the context of anti-kickback violations were

7   rejected as unsupported in the companion case <u>BP W. Coast Prods. V. Shalabi</u>. 2012 U.S. Dist.

8   LEXIS 82879 at *29-30. As in <u>Shalabi</u>, SKR makes only broad conclusory statements supported

9   by no facts or evidence before the Court.

10       In regards to gasoline prices, SKR waived its reasonable price claims by failing to notify

11   BPWCP of non-conformities in compliance with the Vancouver GDA. The GDA requires the

12   buyer notify BPWCP in writing of any nonconformity in the price of gasoline delivered by

13   BPWCP within thirty calendar days of delivery. (Dkt. No. 94-1 at 103.) The same provision says

14   the buyer "waives any claim against BPWCP based on any nonconformity of which Buyer does

15   not so notify BPWCP." (<u>Id</u>.) This is consistent with the Washington Uniform Commercial Code,

16   which also imposes a duty on a buyer to notify the seller within a reasonable period of time if it

17   is rejecting goods that do not conform to the parties' contract.  RCW 62A.2-606(1)(b). SKR does

18   not dispute it never notified BPWCP of price nonconformities within the allotted thirty days after

19   deliverty and sold the gasoline it was delivered, thereby accepting the goods. For these reasons,

20   summary judgment is GRANTED in favor of BPWCP on the reasonable price claims.

21                         3.  With respect to the Vancouver facility, BPWCP's alleged violation of the
22                             vertical price fixing provision of GDBRA and under OMFFA by (a)
                                  taking unspecified retaliatory actions when SKR refused to follow
                                  recommended price fixing and (b) through its zone pricing system.
23

24   ORDER GRANTING SUMMARY JUDGMENT TO
        BPWCP ON COUNTERCLAIMS, DENYING
        MOTION TO VOLUNTARILY DISMISS
        COUNTERCLAIMS, AND DENYING MOTION
        TO AMEND MOTION TO VOLUNTARILY
        DISMISS COUNTERCLAIMS- 11

1

2

3

    The GDBRA and OMFFA contain nearly identical provisions prohibiting gasoline

dealership franchisors from setting or compelling the retail price at which a dealer sells gasoline

to the public. RCW 19.120.060(4), O.R.S. § 650.205(4). SKR alleges BPWCP "fixes the margins

4

5

of their ARCO dealers" in violation of these provisions. (Dkt. No. 47 at 21.) SKR claims

BPWCP "looks at the competitors in a price zone and determines what retail price the zone will

6

7

bear from a market standpoint which will still allow BP to be the low price leader. . . then

dictates the profit margin that is being charged by their franchisee." (Id.)

8

9

    These allegations are contradicted by the testimony of the Riads. Mr. Riad testified to

setting the prices in the SKR stores and determining what the profit margin or mark up should

10

11

be. (Dkt. No. 93-1 at 67.) Mr. Riad stated pricing decisions were made based on the cost of the

product and by surveying the prices of surrounding stations. (Id.)  Mr. Riad's own statements

12

13

indicate the price and profit margin on gasoline were determined by SKR, and not set by

BPWCP. (Id. at 69.) SKR's vertical price fixing claims are not supported by the facts as alleged.

14

15

Summary judgment is GRANTED on these claims in favor of BPWCP.

    C.  Declaratory Judgment  on SKR's right to terminate the GDA

16

17

    SKR asks for a declaratory judgment the GDA is unenforceable because it violates

Washington and Oregon law, BPWCP failed to cure triggering events of default and the GDA

18

19

agreement was properly terminated by SKR. (Dkt. No. 47 at 49.) As discussed above, SKR

makes no successful allegations the GDA is unenforceable or in violation of Washington or

20

21

Oregon law, or that BPWCP breached the contract. SKR is not entitled to a declaratory judgment

that it properly terminated the GDA. Summary judgment on this issue is GRANTED in favor of

22

BPWCP.

23

24

ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 12

1     D.  Statutory and Common Law Fraud Claims, Negligent Misrepresentation

2          SKR's only remaining fraud claim is BPWCP engaged in statutory and common law

3  fraud when Marty Cuneo allegedly made statements to Nagwa Riad about profit margins at a

4  2007 How-to-Bid seminar. (Dkt. No. 47 at 11.) The same incident is the only remaining basis for

5  SKR's negligent misrepresentation claim. (Dkt. No. 117 at 10, Dkt. No. 49 at 22.)The nine

6  elements of common law fraud are: (1) representation of an existing fact; (2) materiality of the

7  representation; (3) falsity of the representation; (4) the speaker's knowledge of the falsity; (5) the

8  speaker's intent that the information be acted upon by the plaintiff; (6) plaintiff's ignorance of

9  the falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely

10 upon it; and (9) resulting damages.  Stiley v. Block, 130 Wn.2d 486, 505-06 (1996). For statutory

11 fraud under FIPA and GDBRA, the elements are the same except there is no knowledge or intent

12 requirement. BP W. Coast Prods., LLC v. Shalabi, 2012 U.S. Dist. LEXIS 82879, *14 (W.D.

13 Wash. June 14, 2012).

14         The elements of negligent misrepresentation are similar: (1) supply of false information

15 for guidance of others in their business transactions; (2) defendant knew or should have known

16 the representations were false; (3) defendant was negligent in obtaining or communicating the

17 false information; (4) plaintiff relied on the false information; (5) reliance was justified; and (6)

18 reliance was the proximate cause of damages. Lawyers Title Ins. Corp. v. Soon J. Baik, 147 Wn.

19 2d 536, 545 (1996).

20         For both the fraud and negligent misrepresentation claims, reliance is a critical element.

21 SKR cannot show reliance on Mr. Cuneo's statements. SKR alleges Marty Cuneo told Ms. Riad

22 gross sales could be calculated based on a profit margin of nine cents per gallon of gasoline and a

23

24

ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 13

1  profit margin of 30-32% on in-store sales. (Dkt. No. 47 at 12.) However, Mr. Riad has stated that

2  in the final projections submitted to their lender the 32% profit margin projected was provided

3  by their lender. (Dkt. No. 93-1 at 45-46.) In making their initial projections, the Riads

4  conservatively calculated the profits with a 19% profit margin on in-store sales. (Id. at 47.) Ms.

5  Riad also stated it was "common knowledge" profit margins in Washington were around 30% for

6  ARCO stores and around six cents per gallon. (Id. at 101.) The fact the Riads used these outside

7  sources and their own estimations to calculate potential profit indicates they did not

8  detrimentally rely on any statement made by Mr. Cuneo.

9          Further, for fraud and negligent misrepresentation, reliance must be justified. Generally,

10  whether reliance is justified is a question of fact, but when reasonable minds could reach only

11  one conclusion justified reliance can be determined as a matter of law. Barnes v. Cornerstone

12  Invest., 54 Wn. App. 474, 478 (1989). Even if it were assumed the Riads relied on Mr. Cuneo's

13  alleged statements, the reliance would not be justified because it is directly contradicted by the

14  express terms of the franchise agreements signed by SKR. Mr. Riad admits he signed the

15  franchise agreements and was aware of the clause within them stating BPWCP provided no

16  representation or warranty, express or implied, as to the operator's profit or income to be derived

17  from the operation of the ampm store. (Id. at 41.) A party cannot reasonably or justifiably rely on

18  a statement directly inconsistent with a subsequently executed contract. Carlock v. Pillsbury Co.,

19  719 F. Supp. 971, 829 (D. Minn. 1989).

20          Finally, the fraud claims fail because SKR does not allege statements that constitute

21  representation of an "existing fact." An estimate of what someone or something will do in the

22  future does not constitute and existing fact, and fraud cannot be predicated upon it. Webster v. L.

23

24  ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 14

1    Romano Eng'g Corp., 178 Wash. 118, 121 (1934). Mr. Cuneo's alleged false statements were

2    projections and/or estimations of profit margins that could be expected, and therefore were not

3    representations of any existing fact. As such, no fraud claim can stem from Mr. Cuneo's alleged

4    statements.  Summary judgment is GRANTED in favor of Plaintiff on SKR's counterclaims of

5    fraud and negligent misrepresentation.

6                    E.   Equitable Counterclaims

7         This Court has already recognized that generally a party to an express contract may not

8    bring an action on an implied contract relating to the same matter. (Dkt. No. 46 at 7.) The Court

9    noted, however, an equitable claim on an implied contract may survive if the express contract is

10   not valid, and because SKR adequately alleged fraud claims the equitable counterclaims were not

11   necessarily barred by the presence of the express contract. (Id. at 8.) As discussed above, SKR's

12   fraud and misrepresentation claims fail. SKR's equitable counterclaims also fail because the

13   express contracts are valid. Summary judgment is GRANTED in favor of Plaintiff on SKR's

14   equitable counterclaims for money had and received, unjust enrichment and constructive trust.

15                   F.   Breach of Contract

16        This Court has already ordered SKR's only remaining breach of contract claim is based

17   on BPWCP's alleged violation of paragraph two of the Vancouver property GDA by failing to

18   timely deliver gasoline. (Dkt. No. 58 at 7.) The contract provision states in relevant part:

19        "Buyer [SKR] will order and make available for retail sale all grades of gasoline
          which  BPWCP offers to Buyer (hereinafter collectively, "Product"), in amounts
20        sufficient to satisfy all foreseeable retail customer demand . . . subject only to
          allocation of Product by BPWCP in a manner determined in BPWCP's sole
21        discretion in Buyer's geographic area. BPWCP will use its best efforts to fill
          Buyer's orders; however, BPWCP may discontinue sale of any grade of product
22        upon fifteen (15) calendar days' prior written notice to Buyer."

23

ORDER GRANTING SUMMARY JUDGMENT TO
24   BPWCP ON COUNTERCLAIMS, DENYING
     MOTION TO VOLUNTARILY DISMISS
     COUNTERCLAIMS, AND DENYING MOTION
     TO AMEND MOTION TO VOLUNTARILY
     DISMISS COUNTERCLAIMS- 15

1   (Dkt. No. 94-1 at 101-02.) SKR argues this section of the GDA requires BPWCP to use its best

2   efforts to deliver gasoline, and BPWCP breached the contract with "a pattern of delaying

3   deliveries to take advantage of price shifts." (Dkt. No. 47 at 26.) SKR also alleges BPWCP

4   "frequently" ran SKR out of gasoline by "failing to use their best efforts to deliver gasoline on

5   numerous occasions." (Id. at 25.)

6        A breach of contract claim depends of proof of four elements: duty, breach, causation,

7   and damages. Baldwin v. Silver, 165 Wn. App. 463, 473 (2011). For any breach to arise, there

8   must first be some duty to perform. SKR fails to establish BPWCP's duty. The clause which

9   SKR alleges was breached says nothing about timeliness. Instead, it only says BWPCP will "use

10  its best efforts" to fill buyers orders. In regards to the allegation SKR ran out of gasoline, the

11  Vancouver GDA does not create a duty for BPWCP to keep the gas tanks full. In fact, the GDA

12  implicitly contemplates SKR may on occasion run out of gasoline when it conditions SKR's

13  obligation to make gasoline available to the public on BPWCP's "allocation of product." (Dkt.

14  No. 94-1 at 102.) Without deciding whether BPWCP was timely in its deliveries or caused SKR

15  to run out of gasoline, it is apparent that it had no duty to be timely or to prevent SKR from

16  having empty tanks. Without a duty there is no breach, and summary judgment is GRANTED in

17  favor of BPWCP on the remaining breach of contract claim.

### Conclusion

19       Because Defendants were dilatory in moving to voluntarily dismiss their counterclaims

20  and Plaintiff will suffer plain legal harm if the claims are dismissed, the Court DENIES the

21  motion to voluntarily dismiss and the motion to amend the motion to voluntarily dismiss.

22

23

ORDER GRANTING SUMMARY JUDGMENT TO
24  BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 16

1 │ Defendants fail to make any counterclaim against Plaintiff and the Court GRANTS the motion

2 │ for summary judgment on Defendants' counterclaims in favor of Plaintiff on all counts.

3

4 │       The clerk is ordered to provide copies of this order to all counsel.

5 │       Dated this 22nd day of October, 2013.

6

7

8 │                 Marsha J. Pechman

9 │                 Chief United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24 │ ORDER GRANTING SUMMARY JUDGMENT TO
BPWCP ON COUNTERCLAIMS, DENYING
MOTION TO VOLUNTARILY DISMISS
COUNTERCLAIMS, AND DENYING MOTION
TO AMEND MOTION TO VOLUNTARILY
DISMISS COUNTERCLAIMS- 17